The Honorable John H. Chun

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>D'ARIUS AKIM JACKSON,<br><br>Defendant. | NO. CR-23-090-02 JHC<br><br>**PLEA AGREEMENT** |

The United States, through Acting United States Attorney Tessa M. Gorman and Assistant United States Attorney Cindy Chang of the Western District of Washington, and Defendant D'Arius A. Jackson and Defendant's attorney Thomas D. Coe enter into the following Plea Agreement, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B).

1. **The Charge.** Defendant, having been advised of the right to have this matter tried before a jury, agrees to waive that right and enters a plea of guilty to Wire Fraud, as charged in Count 19 of the Indictment, in violation of Title 18, United States Code, Section 1343.

Plea Agreement - 1
United States v. D'Arius Jackson, CR23-090-JHC-02

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

By entering a plea of guilty, Defendant hereby waives all objections to the form of the charging document. Defendant further understands that before entering any guilty plea, Defendant will be placed under oath. Any statement given by Defendant under oath may be used by the United States in a prosecution for perjury or false statement.

2. **Elements of the Offense.** The elements of Wire Fraud, as charged in Count 19, to which Defendant is pleading guilty are as follows:

*First*, the Defendant knowingly participated in, or devised, a scheme or plan for obtaining money or property through false or fraudulent pretenses, representations or promises;

*Second*, the promises, statements, or representations were material, that is, they had a natural tendency to influence a person to part with money or property;

*Third*, the Defendant acted with the intent to defraud;

*Fourth:* the Defendant used, or caused to be used, the wires in interstate or foreign commerce to carry out or attempt to carry out an essential part of the scheme; and

*Fifth*, the violation occurred in relation to, or involved, benefit payments authorized, transmitted, disbursed or paid in connection with a presidentially-declared major disaster or emergency.

3. **The Penalties.** Defendant understands that the statutory penalties applicable to the offense to which Defendant is pleading guilty are as follows:

a. For the offense of Wire Fraud, as charged in Count 19: A maximum term of imprisonment of up to 30 years, a fine of up to $1,000,000, a period of supervision following release from prison of up to five years, and a mandatory special assessment of $100 dollars. If a probationary sentence is imposed, the probation period can be for up to five (5) years.

4. **Immigration Consequences.** Defendant recognizes that pleading guilty may have consequences with respect to Defendant's immigration status if Defendant is

Plea Agreement - 2
*United States v. D'Arius Jackson*, CR23-090-JHC-02

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

not a citizen of the United States. Under federal law, a broad range of crimes are grounds for removal, and some offenses make removal from the United States presumptively mandatory. Removal and other immigration consequences are the subject of a separate proceeding, and Defendant understands that no one, including Defendant's attorney and the Court, can predict with certainty the effect of a guilty plea on immigration status. Defendant nevertheless affirms that Defendant wants to plead guilty regardless of any immigration consequences that Defendant's guilty plea may entail, even if the consequence is Defendant's mandatory removal from the United States.

5. **Rights Waived by Pleading Guilty.** Defendant understands that by pleading guilty, Defendant knowingly and voluntarily waives the following rights:

 a. The right to plead not guilty and to persist in a plea of not guilty;

 b. The right to a speedy and public trial before a jury of Defendant's peers;

 c. The right to the effective assistance of counsel at trial, including, if Defendant could not afford an attorney, the right to have the Court appoint one for Defendant;

 d. The right to be presumed innocent until guilt has been established beyond a reasonable doubt at trial;

 e. The right to confront and cross-examine witnesses against Defendant at trial;

 f. The right to compel or subpoena witnesses to appear on Defendant's behalf at trial;

 g. The right to testify or to remain silent at trial, at which trial such silence could not be used against Defendant; and

 h. The right to appeal a finding of guilt or any pretrial rulings.

6. **United States Sentencing Guidelines**. Defendant understands and acknowledges that the Court must consider the sentencing range calculated under the

Plea Agreement - 3
*United States v. D'Arius Jackson*, CR23-090-JHC-02

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

United States Sentencing Guidelines and possible departures under the Sentencing Guidelines together with the other factors set forth in Title 18, United States Code, Section 3553(a), including: (1) the nature and circumstances of the offense(s); (2) the history and characteristics of Defendant; (3) the need for the sentence to reflect the seriousness of the offense(s), to promote respect for the law, and to provide just punishment for the offense(s); (4) the need for the sentence to afford adequate deterrence to criminal conduct; (5) the need for the sentence to protect the public from further crimes of Defendant; (6) the need to provide Defendant with educational and vocational training, medical care, or other correctional treatment in the most effective manner; (7) the kinds of sentences available; (8) the need to provide restitution to victims; and (9) the need to avoid unwarranted sentence disparity among defendants involved in similar conduct who have similar records. Accordingly, Defendant understands and acknowledges that:

    a.    The Court will determine Defendant's Sentencing Guidelines range at the time of sentencing;

    b.    After consideration of the Sentencing Guidelines and the factors in 18 U.S.C. 3553(a), the Court may impose any sentence authorized by law, up to the maximum term authorized by law;

    c.    The Court is not bound by any recommendation regarding the sentence to be imposed, or by any calculation or estimation of the Sentencing Guidelines range offered by the parties or the United States Probation Department, or by any stipulations or agreements between the parties in this Plea Agreement; and

    d.    Defendant may not withdraw a guilty plea solely because of the sentence imposed by the Court.

7.    **Ultimate Sentence**. Defendant acknowledges that no one has promised or guaranteed what sentence the Court will impose.

Plea Agreement - 4
*United States v. D'Arius Jackson*, CR23-090-JHC-02

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

8. **Statement of Facts**. Defendant admits Defendant is guilty of the charged offense. Based on the discovery produced and reviewed, the parties agree on the following facts and further agree that all of these facts constitute relevant conduct under the United States Sentencing Guidelines:

   a. ***Overview.*** From about June 2020 until February 2022, Defendants Paradise Shaw Dreia Williams, D'arius Akim Jackson, Jahri Asad Cunningham, Tia Janee Robinson, Rayvon Darnell Peterson, David Jesus Martinez, and others submitted over 125 applications and fraudulently sought more than $6.8 million, and obtained more than $3.3 million, from various federally-funded COVID-19 pandemic relief programs. They used the funds intended to assist individuals and businesses suffering from the economic impacts of the pandemic for personal expenses such as a Porsche car, gambling, and other goods.

   b. Defendants' scheme targeted the following COVID-19 pandemic relief programs: U.S. Department of Treasury's Emergency Rental Assistance program administered through Washington State grant programs and King County Eviction Prevention and Rental Assistance Program (EPRAP); the Paycheck Protection Program (PPP) administered by the U.S. Small Business Administration (SBA); the Economic Injury Disaster Loan (EIDL) Program administered by SBA; and federally-funded COVID-19 unemployment benefits administered through various state workforce agencies, including those in California, South Carolina, and Nevada.

   c. Emergency Rental Assistance, EIDL, PPP funds, and CARES Act unemployment benefits were authorized, transferred, disbursed, and paid in connection with a nationwide emergency declared by Presidential Proclamation 9994 (effective as of March 1, 2020) and a Presidential declaration of a major disaster for the State of Washington concerning the COVID-19 pandemic that was issued on March 22, 2020.

   d. Jackson participated in the scheme to defraud Emergency Rental Assistance, PPP, and EIDL, seeking at least $457,637 and obtaining at least $436,667.

Plea Agreement - 5
*United States v. D'Arius Jackson*, CR23-090-JHC-02

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

e. Williams orchestrated the scheme and artifice to defraud. Williams, Jackson, Cunningham, Robinson, and Peterson, used their own identities, including numerous aliases and the identities of others, to submit multiple fraudulent applications to various programs. Williams, Jackson, Robinson, and Peterson received kickback payments for fraudulently obtained benefits. The Defendants impersonated and directed others to impersonate landlords and tenants in communications with EPRAP staff who processed the applications. Williams created and submitted fake bank statements and other documents to support the fraudulent applications she and her associates submitted. Williams, and others, also created, used, and maintained multiple email accounts, sometimes using alias names, to perpetuate the fraudulent scheme.

f. Upon receipt of the fraudulent proceeds, the Defendants quickly laundered the funds through cash withdrawals, wire transfers, and expensive purchases.

g. For instance, on January 21, 2022, Jackson received $39,600 in EPRAP funds into his checking account. The same day, he withdrew $10,000 in cash, and three days later, on January 24, 2022, he withdrew $28,000 in cash from his bank account over three separate transactions. He made these and other cash withdrawals to conceal and disguise the nature, source, ownership, and control of the proceeds of the fraudulently obtained funds and knew that these withdrawals were proceeds of unlawful activity.

h. ***Fraudulent Emergency Rental Assistance.*** In response to millions of Americans facing deep rental debt, fear of evictions, and the loss of basic housing security as a result of the COVID-19 pandemic, the U.S. Department of Treasury's Emergency Rental Assistance program provided funding directly to state and local governments to assist households that were unable to pay rent or utilities. From March 2021 through 2022, Treasury's Emergency Rental Assistance program allocated over $900 million to Washington State and local governments, including King County. The Washington Department of Commerce received and administered the state's federal

Plea Agreement - 6
United States v. D'Arius Jackson, CR23-090-JHC-02

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

funds by providing grants to county governments and non-profit organizations to support the homeless crisis response systems in the state. In King County, the Department of Community and Human Services distributed over $300 million in direct federal funds and state grants to approximately 30,000 King County households through EPRAP. Non-Profit Organization 1, which is based in Seattle, also received over $5 million in federally-funded rental assistance grants from the Washington Department of Commerce and distributed the funds to approximately 700 households.

   i. To qualify for rental assistance, the household must have been low-income, experiencing financial hardship due to the COVID-19 pandemic, and been at risk of experiencing homelessness or currently experiencing housing instability. Tenants and landlords could receive up to 12 months of rental assistance (nine months back or current rent and three months advance). The administering agencies acknowledged that there was insufficient funding to help every household who qualified, thus, the screening criteria was intended to target those most likely to become homeless but for the assistance.

   j. At all times relevant to this case, in King County, a landlord could initiate an application for EPRAP assistance by submitting a delinquent tenant's information, and the tenant and landlord could submit self-attestation forms to document eligibility. Landlords were also required to submit W-9 forms and, upon request, evidence of a lease or ledger. After EPRAP calculated the final assistance amount, landlords received an EPRAP agreement by email that they were required to sign and return via DocuSign using interstate wire transmissions. The agreement certified that the signee was authorized to accept the emergency rental assistance payment in satisfaction of rent owed by a tenant.

   k. King County initiated payment of the EPRAP funds by using an interstate wire to upload payment information to a bank server located outside Washington State. EPRAP funds were disbursed to landlords via checks or ACH payments using interstate wire transmissions.

Plea Agreement - 7
United States v. D'Arius Jackson, CR23-090-JHC-02

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

l.  Between on or about August 27, 2021, and February 11, 2022, the Defendants, using their own and others' identities and aliases, posed as landlords and submitted at least 79 fraudulent applications for Emergency Rental Assistance funds, seeking over $2.9 million and obtaining over $2.79 million. At all times relevant to this case, none of the Defendants owned property in King County, and therefore, were not landlords for any property in King County.

m.  Jackson completed and submitted at least 11 applications using the alias "Akim Jackson" and Martinez's name. Williams generated fake documents that were submitted in support of the applications, including ledgers and landlord attestations. The applications were associated with real King County addresses and fake tenant names. In communications with EPRAP staff about the applications, Jackson and Martinez pretended to be tenants and landlords associated with the fraudulent applications Jackson submitted. In total, the applications sought at least $433,395 and caused King County to pay at least $415,845 to Jackson's and Martinez's bank accounts. Williams, Jackson, and Martinez shared the fraudulent proceeds.

n.  As one example of this conduct, as charged in Count 19, on or about January 12, 2022, until on or about January 20, 2022, Jackson submitted five fraudulent EPRAP applications associated with five fake tenants using the landlord alias of "Akim Jackson." In communications with EPRAP staff, Jackson and Martinez impersonated the landlord and tenants for these applications. Williams created and uploaded fake documents to create the "Akim Jackson" landlord account and support these fraudulent applications. The landlord account for Akim Jackson directed King County to pay the rental assistance into Jackson's checking account. On or about January 28, 2022, in connection with these five EPRAP applications, King County used interstate wires originating in Washington to pay $216,825 in Emergency Rental Assistance into Jackson's account.

o.  **Paycheck Protection Program.** PPP was a COVID-19 pandemic relief program administered by SBA that provided forgivable loans to small businesses for job retention and certain other expenses. The PPP permitted participating third-party

Plea Agreement - 8
United States v. D'Arius Jackson, CR23-090-JHC-02

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

lenders to approve and disburse SBA-backed PPP loans to cover payroll, fixed debts, utilities, rent/mortgage, accounts payable and other bills incurred by qualifying businesses during and resulting from the COVID-19 pandemic. PPP loans were fully guaranteed by the SBA. In the event of default, SBA will fully satisfy the lender for any balance remaining on the loan. Further, SBA will forgive any loan up to 100 percent if the borrower uses the funds for specified purposes.

p.   To obtain a PPP loan, a qualifying business, which included certain sole proprietorships, had to submit a PPP loan application, which was signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications to be eligible to obtain the PPP loan, including that the business was in operation on February 15, 2020 and either had employees for whom it paid salaries and payroll taxes or paid independent contractors. A business applying for a PPP loan was required to provide documentation showing its payroll expenses, such as filed federal income tax documents.

q.   Individuals who operated a business under a "sole proprietorship" business structure were also eligible for a PPP loan. To qualify for such a PPP loan, individuals had to report and document their income and expenses from the sole proprietorship, as typically reported to the Internal Revenue Service on a "Form 1040, Schedule C," for a given tax year. As with other PPP loans, this information and supporting documentation was used to calculate the amount of money the individual was entitled to receive under the PPP. The maximum loan amount for a sole proprietorship with no employees was approximately $20,833.

r.   At all times relevant to this case, PPP loan documents were electronically submitted or caused to be submitted by the borrower to a third-party lender service provider, which did not have any servers in Washington State. The borrower signed the loan documents using DocuSign, which has servers within and outside Washington State, and data for a single customer could reside in multiple locations. The third-party lender service provider accessed the signed loan documents and caused those

Plea Agreement - 9
United States v. D'Arius Jackson, CR23-090-JHC-02

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

documents to be sent to a third-party lender that did not have any servers located within Washington State. Therefore, every PPP loan document relevant to this case and initiated online from Washington State, resulted in an interstate wire communication that originated in Washington State and traveled to another state.

      s.    Once approved, the business received the PPP loan proceeds via an electronic funds transfer from the third-party lender to a financial account under the control of the business. The proceeds of a PPP loan could be used for certain specified items, such as payroll costs, costs related to the continuation of group health care benefits, or mortgage interest payments. The proceeds of a PPP loan were not permitted to be used by the borrowers to purchase consumer goods, personal property, to pay the borrower's personal federal income taxes, or to fund the borrower's ordinary day-to-day living expenses unrelated to the specified authorized expenses.

      t.    Between on or about April 10, 2021, and May 23, 2021, Williams, Jackson, and others submitted at least 13 fraudulent PPP applications to lenders who then transmitted the loan files using interstate wire transmissions, seeking a total of approximately $253,000. In exchange for facilitating and submitting the fraudulent applications, the individuals paid Williams a kickback upon receipt of the funds.

      u.    As one example of this conduct, on or about May 14, 2021, an interstate wire originating in King County, Washington was used to transmit a fraudulent PPP application that Williams prepared in Jackson's identity with Jackson's authorization. The application claimed that Jackson was a sole proprietor of a food delivery business that began on January 1, 2020, with a gross income of $100,000. All of these representations were false, and Williams created and submitted a fake bank statement in support of the application. The application directed loan proceeds to be paid into a bank account in Jackson's name. On or about June 14, 2021, the application was funded for $20,832, and the proceeds were deposited into Jackson's bank account.

      v.    ***Economic Injury Disaster Loan Program.*** SBA also administers the EIDL Program, which provides low-interest financing to small businesses and non-

Plea Agreement - 10
United States v. D'Arius Jackson, CR23-090-JHC-02

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

profit organizations in regions affected by declared disasters. In March 2020, the Coronavirus Aid, Relief, and Economic Security (CARES) Act authorized the SBA to provide EIDLs of up to $2 million to eligible small businesses experiencing substantial financial disruption due to the COVID-19 pandemic. The CARES Act and subsequent legislation also authorized the SBA to issue advances of up to $10,000 to small businesses within three days of applying for an EIDL. EIDL Advances did not have to be repaid. EIDL funds can be used for payroll expenses, sick leave, production costs, and business obligations, such as debts, rent, and mortgage payments.

w. A qualifying business, which could include sole proprietorships, that applied for an EIDL had to submit an application to the SBA and provide information about its operations, such as the number of employees, gross revenues for the 12-month period preceding the disaster, and cost of goods sold in the 12-month period preceding the disaster. The applicant had to certify that all of the information in the application was true and correct to the best of the applicant's knowledge.

x. Applicants submitted EIDL applications online directly to the SBA for processing. SBA directly disbursed EIDL funds to an account identified by the applicant. In all instances relevant to this case, when an applicant submitted an COVID-19 EIDL application online, SBA received it at a server outside Washington State. Therefore, every COVID-19 EIDL application relevant to this case and submitted online from Washington State, resulted in an interstate wire communication that originated in Washington State and traveled to another state.

y. Beginning no later than June 25, 2020, until at least on or about August 17, 2021, Williams, Jackson, Cunningham, Robinson, Peterson, and others submitted at least 35 fraudulent EIDL applications to SBA using the identities of themselves and others, seeking a total of approximately $3.7 million and obtaining approximately $300,000. In exchange for facilitating and submitting the fraudulent applications, the individuals paid Williams a kickback upon receipt of the funds.

Plea Agreement - 11
United States v. D'Arius Jackson, CR23-090-JHC-02

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

z.  As one example of this conduct, on or about July 12, 2020, Williams submitted a fraudulent EIDL application using Jackson's identity with Jackson's authorization. The application claimed that Jackson was a sole proprietor of a hair and nail salon, "Cut n up LLC." The application claimed gross revenues of $6,800 for the 12 months prior to January 31, 2020, identified Jackson as the "CEO," and claimed to have seven employees as of January 31, 2020. All of these representations were false. The application direct loan proceeds to be paid to Jackson's bank account. The application was denied without being funded because Jackson did not meet credit score requirements.

The parties agree that the Court may consider additional facts contained in the Presentence Report (subject to standard objections by the parties) and/or that may be presented by the United States or Defendant at the time of sentencing, and that the factual statement contained herein is not intended to limit the facts that the parties may present to the Court at the time of sentencing.

9.  **Sentencing Factors**. The parties agree that the following Sentencing Guidelines provisions apply to this case:

The following provisions apply to defendant's conviction of Count 19:

a.  A base offense level of 7, pursuant to USSG § 2B1.1(a)(1);

b.  An increase of 12 points because the intended loss from the offense exceeded $250,000 but was less than $550,000, pursuant to USSG § 2B1.1(b)(1)(G);

c.  An increase of two points because the offense involved sophisticated means, pursuant to USSG § 2B1.1(b)(10); and

d.  An increase of two points because the offense involved benefits authorized under a presidentially-declared major disaster or emergency, pursuant to USSG § 2B1.1(b)(12).

The parties agree they are free to present arguments regarding the applicability of all other provisions of the United States Sentencing Guidelines. Defendant understands, however, that at the time of sentencing, the Court is free to reject these stipulated

Plea Agreement - 12
*United States v. D'Arius Jackson*, CR23-090-JHC-02

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

adjustments, and is further free to apply additional downward or upward adjustments in determining Defendant's Sentencing Guidelines range.

10. **Acceptance of Responsibility.** At sentencing, *if* the Court concludes Defendant qualifies for a downward adjustment for acceptance of responsibility pursuant to USSG § 3E1.1(a) and Defendant's offense level is 16 or greater, the United States will make the motion necessary to permit the Court to decrease the total offense level by three (3) levels pursuant to USSG §§ 3E1.1(a) and (b), because Defendant has assisted the United States by timely notifying the United States of Defendant's intention to plead guilty, thereby permitting the United States to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

11. **Recommendation Regarding Imprisonment**. Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B), the government agrees to recommend that the appropriate term of imprisonment to be imposed by the Court at the time of sentencing is a term of no more than the 63 months. Defendant is free to recommend any sentence. Defendant understands that this recommendation is not binding on the Court, and the Court may reject the recommendation of the parties and may impose any term of imprisonment up to the statutory maximum penalty authorized by law. Defendant further understands that Defendant cannot withdraw a guilty plea simply because of the sentence imposed by the Court. Except as otherwise provided in this Plea Agreement, the parties are free to present arguments regarding any other aspect of sentencing.

12. **Restitution.** Defendant shall make restitution to the United States Department of the Treasury in the amount of $415,845 and the U.S. Small Business Administration in the amount of $20,832, with credit for any amounts already paid.

   a. The full amount of restitution shall be due and payable immediately on entry of judgment and shall be paid as quickly as possible. If the Court finds that the defendant is unable to make immediate restitution in full and sets a payment schedule as contemplated in 18 U.S.C. § 3664(f), Defendant agrees that the Court's schedule

Plea Agreement - 13
*United States v. D'Arius Jackson*, CR23-090-JHC-02

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

represents a minimum payment obligation and does not preclude the U.S. Attorney's Office from pursuing any other means by which to satisfy the defendant's full and immediately-enforceable financial obligation, including, but not limited to, by pursuing assets that come to light only after the district court finds that the defendant is unable to make immediate restitution.

         b.      Defendant agrees to disclose all assets in which Defendant has any interest or over which Defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or third party. Defendant agrees to cooperate fully with the United States' investigation identifying all property in which Defendant has an interest and with the United States' lawful efforts to enforce prompt payment of the financial obligations to be imposed in connection with this prosecution. Defendant's cooperation obligations are: (1) before sentencing, and no more than 30 days after executing this Plea Agreement, truthfully and completely executing a Financial Disclosure Statement provided by the United States Attorney's Office and signed under penalty of perjury regarding Defendant's and Defendant's spouse's financial circumstances and producing supporting documentation, including tax returns, as requested; (2) providing updates with any material changes in circumstances, as described in 18 U.S.C. § 3664(k), within seven days of the event giving rise to the changed circumstances; (3) authorizing the United States Attorney's Office to obtain Defendant's credit report before sentencing; (4) providing waivers, consents or releases requested by the U.S. Attorney's Office to access records to verify the financial information; (5) authorizing the U.S. Attorney's Office to inspect and copy all financial documents and information held by the U.S. Probation Office; (6) submitting to an interview regarding Defendant's Financial Statement and supporting documents before sentencing (if requested by the United States Attorney's Office), and fully and truthfully answering questions during such interview; and (7) notifying the United States Attorney's Office before transferring any interest in property

Plea Agreement - 14
United States v. D'Arius Jackson, CR23-090-JHC-02

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

owned directly or indirectly by Defendant, including any interest held or owned in any other name, including all forms of business entities and trusts.

c. The parties acknowledge that voluntary payment of restitution prior to the adjudication of guilt is a factor the Court considers in determining whether Defendant qualifies for acceptance of responsibility pursuant to USSG § 3E1.1(a). In addition, in any event, the government will consider Defendant's cooperation regarding restitution in making its sentencing recommendation.

13. **Forfeiture of Assets**. The Defendant understands that the forfeiture of property is part of the sentence that must be imposed in this case. Defendant agrees to forfeit to the United States immediately Defendant's right, title, and interest in any and all property that constitutes or is derived from proceeds Defendant obtained from commission of Wire Fraud, as charged in Count 19 of the Indictment. All such property is forfeitable pursuant to Title 18, United States Code, Section 981(a)(1)(C), by way of, Title 28, United States Code, Section 2461(c), and includes but is not limited to a judgment for a sum of money in the amount of $436,677 representing the proceeds Defendant personally obtained from his commission of the wire-fraud scheme described above.

Defendant understands and acknowledges this forfeited sum of money is separate and distinct from the restitution that is ordered in this case. The United States agrees, however, that it will request the Attorney General apply any amounts it collects toward satisfaction of this forfeited sum to the restitution that is ordered. The United States also agrees that any amount Defendant pays toward restitution will be credited against this forfeited sum.

Defendant agrees to fully assist the United States in the forfeiture of the above-described property and to take whatever steps are necessary to pass clear title to the United States, including but not limited to: surrendering title and executing any documents necessary to effect forfeiture; assisting in bringing any assets located outside

Plea Agreement - 15
*United States v. D'Arius Jackson*, CR23-090-JHC-02

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

the United States within the jurisdiction of the United States; and taking whatever steps are necessary to ensure that assets subject to forfeiture are not sold, disbursed, wasted, hidden, or otherwise made unavailable for forfeiture. The Defendant agrees not to file a claim to any of the above-described property in any federal forfeiture proceeding, administrative or judicial, which may be or has been initiated. The Defendant further agrees not to assist any party who may file a claim to this property in any federal forfeiture proceeding.

The United States reserves its right to proceed against any remaining property not identified in this Plea Agreement, including any property in which the Defendant has any interest or control, if that property constitutes or is traceable to proceeds of his commission of the wire-fraud scheme described above.

14. **Abandonment of Contraband**. Defendant also agrees that, if any federal law enforcement agency seized any illegal contraband that was in Defendant's direct or indirect control, Defendant consents to the federal administrative disposition, official use, and/or destruction of that contraband.

15. **Non-Prosecution of Additional Offenses**. As part of this Plea Agreement, the United States Attorney's Office for the Western District of Washington agrees not to prosecute Defendant for any additional offenses known to it as of the time of this Plea Agreement based upon evidence in its possession at this time, and that arise out of the conduct giving rise to this investigation, and moves to dismiss the remaining counts in the Indictment at the time of sentencing. In this regard, Defendant recognizes the United States has agreed not to prosecute all of the criminal charges the evidence establishes were committed by Defendant solely because of the promises made by Defendant in this Plea Agreement. Defendant agrees, however, that for purposes of preparing the Presentence Report, the United States Attorney's Office will provide the United States Probation Office with evidence of all conduct committed by Defendant.

Plea Agreement - 16
United States v. D'Arius Jackson, CR23-090-JHC-02

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Defendant agrees that any charges to be dismissed before or at the time of sentencing were substantially justified in light of the evidence available to the United States, were not vexatious, frivolous or taken in bad faith, and do not provide Defendant with a basis for any future claims under the "Hyde Amendment," Pub. L. No. 105-119 (1997).

16. **Breach, Waiver, and Post-Plea Conduct.** Defendant agrees that, if Defendant breaches this Plea Agreement: (a) the United States may withdraw from this Plea Agreement and Defendant may be prosecuted for all offenses for which the United States has evidence; (b) Defendant will not oppose any steps taken by the United States to nullify this Plea Agreement, including the filing of a motion to withdraw from the Plea Agreement; and (c) Defendant waives any objection to the re-institution of any charges that previously were dismissed or any additional charges that had not been prosecuted.

Defendant further understands that if, after the date of this Plea Agreement, Defendant should engage in illegal conduct, or conduct that violates any conditions of release or the conditions of confinement (examples of which include, but are not limited to, obstruction of justice, failure to appear for a court proceeding, criminal conduct while pending sentencing, and false statements to law enforcement agents, the Pretrial Services Officer, Probation Officer, or Court), the United States is free under this Plea Agreement to file additional charges against Defendant or to seek a sentence that takes such conduct into consideration by requesting the Court to apply additional adjustments or enhancements in its Sentencing Guidelines calculations in order to increase the applicable advisory Guidelines range, and/or by seeking an upward departure or variance from the calculated advisory Guidelines range. Under these circumstances, the United States is free to seek such adjustments, enhancements, departures, and/or variances even if otherwise precluded by the terms of the Plea Agreement.

17. **Waiver of Appellate Rights and Rights to Collateral Attacks.** Defendant acknowledges that, by entering the guilty plea(s) required by this Plea

Plea Agreement - 17
United States v. D'Arius Jackson, CR23-090-JHC-02

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Agreement, Defendant waives all rights to appeal from Defendant's conviction, and any pretrial rulings of the Court, and any rulings of the Court made prior to entry of the judgment of conviction. Defendant further agrees that, provided the Court imposes a custodial sentence that is within or below the Sentencing Guidelines range (or the statutory mandatory minimum, if greater than the Guidelines range) as determined by the Court at the time of sentencing, Defendant waives to the full extent of the law:

    a.    Any right conferred by Title 18, United States Code, Section 3742, to challenge, on direct appeal, the sentence imposed by the Court, including any fine, restitution order, probation or supervised release conditions, or forfeiture order (if applicable); and

    b.    Any right to bring a collateral attack against the conviction and sentence, including any restitution order imposed, except as it may relate to the effectiveness of legal representation.

This waiver does not preclude Defendant from bringing an appropriate motion pursuant to 28 U.S.C. § 2241, to address the conditions of Defendant's confinement or the decisions of the Bureau of Prisons regarding the execution of Defendant's sentence.

If Defendant breaches this Plea Agreement at any time by appealing or collaterally attacking (except as to effectiveness of legal representation) the conviction or sentence in any way, the United States may prosecute Defendant for any counts, including those with mandatory minimum sentences, that were dismissed or not charged pursuant to this Plea Agreement.

18. **Voluntariness of Plea**. Defendant agrees that Defendant has entered into this Plea Agreement freely and voluntarily, and that no threats or promises were made to induce Defendant to enter a plea of guilty other than the promises contained in this Plea Agreement or set forth on the record at the change of plea hearing in this matter.

19. **Statute of Limitations**. In the event this Plea Agreement is not accepted by the Court for any reason, or Defendant breaches any of the terms of this Plea

Plea Agreement - 18
United States v. D'Arius Jackson, CR23-090-JHC-02

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Agreement, the statute of limitations shall be deemed to have been tolled from the date of the Plea Agreement to: (1) thirty (30) days following the date of non-acceptance of the Plea Agreement by the Court; or (2) thirty (30) days following the date on which a breach of the Plea Agreement by Defendant is discovered by the United States Attorney's Office.

20. **Completeness of Plea Agreement**. The United States and Defendant acknowledge that these terms constitute the entire Plea Agreement between the parties, except as may be set forth on the record at the change of plea hearing in this matter. This Plea Agreement binds only the United States Attorney's Office for the Western District of Washington. It does not bind any other United States Attorney's Office or any other office or agency of the United States, or any state or local prosecutor.

Dated this 26th day of October, 2023.

_____
D'ARIUS AKIM JACKSON
Defendant

_____
THOMAS DAVID COE
Attorney for Defendant

_____
CINDY CHANG
Assistant United States Attorney

Plea Agreement - 19
United States v. D'Arius Jackson, CR23-090-JHC-02

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970